No. 24-2079

# In the United States Court of Appeals for the Fourth Circuit

------

ISAIAH WILKINS, CAROL COE, NATALIE NOE, and MINORITY VETERANS OF AMERICA,

Plaintiffs–Appellees,

*v.*

PETE HEGSETH, in his official capacity as Secretary of Defense, and DANIEL P. DRISCOLL, in his official capacity as Secretary of the Army,

Defendants–Appellants.

------

On Appeal from the United States District Court for the Eastern District of Virginia, Case No. 1:22-cv-01272-LMB-IDD Hon. Leonie M. Brinkema

------

## BRIEF OF THE INSTITUTE FOR JUSTICE AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS–APPELLEES

------

Andrew Ward
INSTITUTE FOR JUSTICE
901 North Glebe Road
Suite 900
Arlington, VA 22203
(703) 682-9320
award@ij.org

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-2079__        Caption: __Isaiah Wilkins, et al. v. Pete Hegseth, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Institute for Justice__
(name of party/amicus)

_____

 who is _____Amicus Curiae_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?           ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?           ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Andrew Ward _____     Date: ___July 17, 2025___

Counsel for: Amicus Curiae _____

Print to PDF for Filing

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTEREST OF *AMICUS CURIAE* AND INTRODUCTION ...................1

ARGUMENT ......................................................................................3

I.    Plaintiffs can and do win rational-basis cases ...............................3

      A.    … at the Supreme Court. ......................................4

      B.    … in the circuits. ................................................9

      C.    … and within this Circuit. ..................................11

II.   Evidence matters in rational-basis cases. ....................................13

CONCLUSION ................................................................................17

CERTIFICATE OF COMPLIANCE........................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allegheny Pittsburgh Coal Co. v. County Commission,*
  488 U.S. 336 (1989) ............................................................................ 4, 7

*Amatel v. Reno,*
  156 F.3d 192 (D.C. Cir. 1998)............................................................. 17

*Bowen v. American Hospital Association,*
  476 U.S. 610 (1986) .............................................................................. 1

*Brown v. Smith,*
  2024 WL 2819224 (E.D. Va. June 3, 2024) ....................................... 11

*Burstyn v. City of Miami Beach,*
  663 F. Supp. 528 (S.D. Fla. 1987) ...................................................... 16

*Cano v. South Carolina Department of Corrections,*
  2023 WL 6644277 (D.S.C. May 31, 2023) .......................................... 11

*Cano v. South Carolina Department of Corrections,*
  2023 WL 5767678 (D.S.C. Sept. 7, 2023) ........................................... 11

*Carcaño v. Cooper,*
  350 F. Supp. 3d 388 (M.D.N.C. 2018) ................................................ 11

*Catherine H. Barber Memorial Shelter, Inc. v. Town of*
  *North Wilkesboro,*
  576 F. Supp. 3d 318 (W.D.N.C. 2021) ................................................ 11

*Chappelle v. Greater Baton Rouge Airport District,*
  431 U.S. 159 (1977) ............................................................................ 4, 7

*Christian Heritage Academy v. Oklahoma Secondary School
    Activities Association*,
    483 F.3d 1025 (10th Cir. 2007) ........................................................... 10

*City of Cleburne v. Cleburne Living Center*,
    473 U.S. 432 (1985) ................................................................. 4, 5, 6, 13

*City of Greensboro v. Guilford County Board of Elections*,
    248 F. Supp. 3d 692 (M.D.N.C. 2017) .................................................. 11

*City of New Orleans v. Dukes*,
    427 U.S. 297 (1976) ............................................................................ 6, 8

*Copelin–Brown v. New Mexico State Personnel Office*,
    399 F.3d 1248 (10th Cir. 2005) ........................................................... 10

*Craigmiles v. Giles*,
    312 F.3d 220 (6th Cir. 2002) ............................................................ 9, 16

*Cruz v. Town of Cicero*,
    275 F.3d 579 (7th Cir. 2001) ................................................................. 9

*Dias v. City & County of Denver*,
    567 F.3d 1169 (10th Cir. 2009) ......................................................... 9, 15

*Doe v. Pennsylvannia Board of Probation & Parole*,
    513 F.3d 95 (3d Cir. 2008) ..................................................................... 9

*Dove v. Patuxent Facility*,
    2021 WL 5053095 (D. Md. Nov. 1, 2021) ............................................ 11

*Edwards v. District of Columbia*,
    755 F.3d 996 (D.C. Cir. 2014) ............................................................... 9

*Fauconier v. Clarke*,
    966 F.3d 265 (4th Cir. 2020) ..................................................... 9, 11, 12

*Federal Communications Comission v. Beach Communications, Inc.*,
  508 U.S. 307 (1993) ................................................................ 8

*Fitzgerald v. Racing Association of Central Iowa*,
  539 U.S. 103 (2003) ................................................................ 5

*Fortress Bible Church v. Feiner*,
  694 F.3d 208 (2d Cir. 2012) ................................................... 9

*Frost v. City of Sioux City*,
  2017 WL 4126986 (N.D. Iowa Sept. 18, 2017) .................... 16

*Geo-Tech Reclamation Industries, Inc. v. Hamrick*,
  886 F.2d 662 (4th Cir. 1989) ......................................... 11, 15

*Hadix v. Johnson*,
  230 F.3d 840 (6th Cir. 2000) ................................................. 3

*Hooper v. Bernalillo County Assessor*,
  472 U.S. 612 (1985) ............................................................ 4, 5

*James v. Strange*,
  407 U.S. 128 (1972) ............................................................ 4, 7

*Lawrence v. Texas*,
  539 U.S. 558 (2003) ................................................................ 4

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ............................................... 14

*Legend Night Club v. Prince George's County Board of License
  Commissioners*,
  2009 WL 926989 (D. Md. Apr. 1, 2009)............................... 11

*In re Levenson*,
  587 F.3d 925 (9th Cir. 2009) ............................................... 10

*Lindsey v. Normet,*
   405 U.S. 56 (1972) ............................................................ 4, 8

*Long v. Robinson,*
   316 F. Supp. 22 (D. Md. 1970) ........................................ 14

*Long v. Robinson,*
   436 F.2d 1116 (4th Cir. 1971) ......................................... 14

*Massachusetts v. U.S. Department of Health & Human Services,*
   682 F.3d 1 (1st Cir. 2012) ................................................. 9

*Mathers v. Wright,*
   636 F.3d 396 (8th Cir. 2011) ............................................. 9

*Mathews v. Lucas,*
   427 U.S. 495 (1976) ........................................................... 3

*Mayer v. City of Chicago,*
   404 U.S. 189 (1971) ........................................................ 4, 7

*Merrifield v. Lockyer,*
   547 F.3d 978 (9th Cir. 2008) ............................................. 9

*Metropolitan Life Insurance Co. v. Ward,*
   470 U.S. 869 (1985) ........................................................ 4, 5

*Milnot Co. v. Richardson,*
   350 F. Supp. 221 (N.D. Ill. 1972) .................................... 13

*Minnesota v. Clover Leaf Creamery Co.,*
   449 U.S. 456 (1981) ..................................................... 14, 16

*Morrison v. Garraghty,*
   239 F.3d 648 (4th Cir. 2001) ........................................... 11

*Motor Vehicle Manufacturers Association of the United States, Inc.*
  *v. State Farm Mutual Automobile Insurance Co.*,
  463 U.S. 29 (1983) ................................................................... 1

*Pedersen v. Office of Personnel Management*,
  881 F. Supp. 2d 294 (D. Conn. 2012) .................................... 16

*Phan v. Virginia*,
  806 F.2d 516 (4th Cir. 1986) .......................................... 11, 14

*Planned Parenthood of Indiana & Kentucky, Inc. v. Commissioner*,
  *Indiana Department of Health*,
  64 F. Supp. 3d 1235 (S.D. Ind. 2014) .................................. 16

*Plyler v. Doe*,
  457 U.S. 202 (1982) ................................................... 4, 7, 14

*Quinn v. Millsap*,
  491 U.S. 95 (1989) ............................................................ 4, 6

*Reed v. Reed*,
  404 U.S. 71 (1971) .................................................................. 4

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) .............................................. 10

*Roe v. Department of Defense*,
  947 F.3d 207 (4th Cir. 2020) ................................................ 2

*Romer v. Evans*,
  517 U.S. 620 (1996) ......................................................... 4, 5

*Saint Joseph Abbey v. Castille*,
  712 F.3d 215 (5th Cir. 2013) ...................................... *passim*

*Servin–Espinoza v. Ashcroft*,
  309 F.3d 1193 (9th Cir. 2002) ............................................. 10

*Silveira v. Lockyer*,
   312 F.3d 1052 (9th Cir. 2002) ....................................................... 9

*Simi Inv. Co. v. Harris County*,
   236 F.3d 240 (5th Cir. 2000) ......................................................... 9

*Swanson v. City of Chetek*,
   719 F.3d 780 (7th Cir. 2013) ......................................................... 9

*Tapalian v. Tusino*,
   377 F.3d 1 (1st Cir. 2004) .............................................................. 9

*Tiwari v. Friedlander*,
   2020 WL 4745772 (W.D. Ky. Aug. 14, 2020) ............................. 16

*Turner v. Fouche*,
   396 U.S. 346 (1970) ................................................................... 4, 7

*U.S. Department of Agriculture. v. Moreno*,
   413 U.S. 528 (1973) ............................................................... 4, 5, 7

*United States v. Carolene Products Co.*,
   304 U.S. 144 (1938) ..................................................................... 14

*United States v. Lopez*,
   514 U.S. 549 (1995) ....................................................................... 4

*United States v. Morrison*,
   529 U.S. 598 (2000) ....................................................................... 4

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025) ............................................................. 4, 13

*United States v. Weston*,
   255 F.3d 873 (D.C. Cir. 2001) ...................................................... 1

*United States v. Windsor*,
   570 U.S. 744 (2013) ....................................................................... 4

*Vaqueria Tres Monjitas, Inc. v. Irizarry,*
    587 F.3d 464 (1st Cir. 2009) ..................................................... 9

*Village of Willowbrook v. Olech,*
    528 U.S. 562 (2000) .................................................................. 4

*Whitaker v. Sheild,*
    2006 WL 1321481 (E.D. Va. May 3, 2006) ........................................ 11

*Wideman v. Innovative Fibers LLC,*
    100 F.4th 490 (4th Cir. 2024) ............................................................ 2

*Williams v. Vermont,*
    472 U.S. 14 (1985) ............................................................... 4, 6

*Williamson v. Lee Optical of Oklahoma, Inc.,*
    348 U.S. 483 (1955) .................................................................. 8

*Zobel v. Williams,*
    457 U.S. 55 (1982) ........................................................... 4, 5, 6

## OTHER AUTHORITIES

William Eskridge & John Ferejohn,
    *The APA as a Super-Statute: Deep Compromise and Judicial
    Review of Notice-and-Comment Rulemaking*, 98 Notre Dame L.
    Rev. 1893 (2023) .................................................................... 2

## INTEREST OF *AMICUS CURIAE* AND INTRODUCTION

The Institute for Justice is a nonprofit public-interest law firm that litigates for greater judicial protection of individual rights. It routinely represents clients *pro bono* in suits about property rights and economic liberties. These rights are not deemed "fundamental" and so are subject to rational-basis review. IJ thus has an interest in how this Court applies the rational-basis test, as it may in this case.

That said, it appears that the test should not be involved here. The district court held that the challenged ban was both irrational under Equal Protection principles and arbitrary and capricious under the Administrative Procedure Act. Appellants' Br. 11, 13. These standards are sometimes called "analogues," *United States v. Weston*, 255 F.3d 873, 880 (D.C. Cir. 2001), but they are not identical. Rather, the Supreme Court has explicitly rejected (in the leading arbitrary-and-capricious case, no less) "that the arbitrary and capricious standard requires no more than the minimum rationality a statute must bear." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 n.9 (1983); *see also Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626–27 (1986) (plurality opinion) (same). "Arbitrary and capricious" instead sets

forth a standard for government action that is strictly more demanding.[1] Despite that, the government has not briefed how it can meet the arbitrary-and-capricious standard, and the Court, of course, need not decide the case under the standard the government offered. *See* Appellants' Br. 16–17, 19–60; *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 494 n.3 (4th Cir. 2024). So the Court could do what it did the last time it considered HIV and the military, apply that near-dispositive case, and rule on the APA claim alone. *See Roe v. Department of Defense*, 947 F.3d 207 (4th Cir. 2020).

In case the Court does address the rational-basis test, however, amicus offers this brief to dispel some myths about how the test works.[2] Undoubtedly, rational-basis review *is* deferential. It may even be "highly deferential." Appellants' Br. 19. But it is not—as the government often treats it—completely deferential.

---

[1] *See also, e.g.*, William Eskridge & John Ferejohn, *The APA as a Super-Statute: Deep Compromise and Judicial Review of Notice-and-Comment Rulemaking*, 98 Notre Dame L. Rev. 1893, 1933–34 (2023) ("[T]he APA's use of the term 'arbitrary and capricious' reflected a broader standard of review than the rational basis test which the Court has adopted for economic legislation").

[2] All parties have consented to the filing of this brief.

-2-

Rather, up and down the federal courts, the standard is what it says it is: a test. Not "toothless," *Mathews v. Lucas*, 427 U.S. 495, 510 (1976), and "not a rubber stamp," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). In practice, it is a test under which Plaintiffs routinely win. The reason is that the rational-basis test, like every other constitutional standard, turns on the evidence. The Court here thus should not reflexively accept any justification for the challenged ban, no matter how farfetched. The Court should instead give the plaintiffs' Equal Protection claim the serious review that all constitutional claims deserve.

## ARGUMENT

### I.   Plaintiffs can and do win rational-basis cases

Rational-basis review is a deferential standard, but plaintiffs can and do win under it—in the Supreme Court, in the circuits, and in this Circuit. Which makes sense. If plaintiffs never won under a legal standard, it wouldn't be a standard, just a sham at the end of an empty, expensive process. Since plaintiffs do win, rational-basis review must have some substance. That substance can be seen at every level of the federal courts.

A.     … *at the Supreme Court.*

Start at the top. Since 1970, plaintiffs have won at least 19 rational-basis cases at the Supreme Court.[3] (The Court cited two of them, *Cleburne* and *Romer*, as good law just weeks ago.[4]) Those cases show that the Court invalidates government action under rational-basis review in three circumstances: (1) when there is no legitimate governmental interest, (2) when there is no logical connection between the action and the offered government interest, and (3) when the law is so

---

[3] *See United States v. Morrison*, 529 U.S. 598, 614–15 (2000); *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (per curiam); *Romer v. Evans*, 517 U.S. 620, 634–35 (1996); *United States v. Lopez*, 514 U.S. 549, 567 (1995); *Quinn v. Millsap*, 491 U.S. 95, 108 (1989); *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n*, 488 U.S. 336, 345 (1989); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 449–50 (1985); *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612, 623 (1985); *Williams v. Vermont*, 472 U.S. 14, 24–25 (1985); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 880 (1985); *Plyler v. Doe*, 457 U.S. 202, 230 (1982); *Zobel v. Williams*, 457 U.S. 55, 61–63 (1982); *Chappelle v. Greater Baton Rouge Airport Dist.*, 431 U.S. 159 (1977) (per curiam); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *James v. Strange*, 407 U.S. 128, 141–42 (1972); *Lindsey v. Normet*, 405 U.S. 56, 77–78 (1972); *Mayer v. City of Chicago*, 404 U.S. 189, 196–97 (1971); *Reed v. Reed*, 404 U.S. 71, 76–77 (1971); *Turner v. Fouche*, 396 U.S. 346, 363–64 (1970). There are more if you count *Lawrence v. Texas*, 539 U.S. 558 (2003), or *United States v. Windsor*, 570 U.S. 744 (2013).

[4] *United States v. Skrmetti*, 145 S. Ct. 1816, 1836 (2025) (noting the irrationality evidenced by the "record" in *Cleburne* and the "animus" in *Romer*).

-4-

disproportionate that it imposes a harm that vastly outweighs any plausible benefit.

*Legitimacy of Interest.* First, a statute fails the rational-basis test when the government asserts only illegitimate interests. Sheer animus against a disfavored group is not a legitimate government interest.[5] Neither, for instance, is naked economic protectionism.[6]

*Logical Connection.* Second, the means–ends fit must be rational. To survive under rational-basis review, a law must be "*rationally* related

---

[5] *See City of Cleburne*, 473 U.S. at 448 (finding that prejudice against the mentally handicapped motivated the government decision to deny a group-home permit); *Romer*, 517 U.S. at 635 (finding no legitimate interest in anti-gay animus); *Hooper*, 472 U.S. at 623 (finding no legitimate interest in creating different classes of bona fide residents); *Zobel*, 457 U.S. at 65 (finding no legitimate interest in creating permanent classes of bona fide residents); *Moreno*, 413 U.S. at 534 (holding that a "bare congressional desire to harm a politically unpopular group" is not a legitimate government interest).

[6] When the government favors one group over another, it must justify the unequal treatment with something more than a naked desire to benefit the favored group or harm the disfavored group. *Compare Metro. Life Ins. Co. v. Ward.* 470 U.S. 869, 878 (1985) (invalidating an Alabama law that protected domestic insurance companies from out-of-state competition when the law was naked economic favoritism with no rational connection to any valid public justification), *with Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 109 (2003) (holding that advantageous treatment of riverboats was justified not solely by a desire to financially benefit riverboats, but by the state's desire "to encourage the economic development of river communities").

to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam) (emphasis added). The Court's decisions thus show that a law is not rational if it is not meaningfully connected to the governmental interest offered to support it. For example, in *Zobel v. Williams*, 457 U.S. 55 (1982), a program distributed oil money to Alaskans based on their length of residency, with those who lived in the state long before the enactment of the law receiving considerably more than those who moved to Alaska later. *Id.* at 57. Alaska justified the law, in part, by asserting that the statute would encourage settlement in the sparsely populated state. *Id.* at 61. The Court rejected this justification because, if the goal were to encourage people to move to Alaska, it would make no sense to pay long-term residents more than recently arrived residents. *Id.* at 62–63. Then the Court struck down the program because Alaska's asserted rationales provided no logical support for the law. *Id.* at 65. That is what the Court regularly does when the government fails to logically support its actions.[7]

---

[7] *See also City of Cleburne*, 473 U.S. at 449–50 (finding no logical connection between the City's asserted interest in ensuring group homes were not too big and the City's routine granting of permits for group homes of similar size); *Williams*, 472 U.S. at 24–25 (finding no logical

*Proportionality.* Finally, a classification fails rational-basis review when it causes a public harm that far outweighs any plausible public benefit. For example, in *Plyler v. Doe*, the government argued that denying public education to the children of illegal immigrants could help save the government money. 457 U.S. 202 (1982). The Court rejected this argument, noting that the alleged benefit was "wholly insubstantial in light of the costs"—of creating a subclass of illiterates—"to these children, the State, and the Nation." *Id.* at 230.[8]

---

connection between Vermont's asserted interest in encouraging state residents to purchase cars in state and Vermont's taxing of cars that were purchased out of state *before* their owners moved to Vermont); *Quinn*, 491 U.S. at 108 (finding no logical connection between an individual's ability to understand politics and an individual's ownership or non-ownership of land); *Chappelle*, 431 U.S. 159 (same); *Moreno*, 413 U.S. at 534 (finding no logical connection between stimulating the agricultural economy and providing food stamps only to households containing people who are related to one another); *Mayer*, 404 U.S. at 196 (finding, where the government had adopted a policy that inability to pay was not a sufficient reason to deny a transcript to a felony defendant, that there was no logical reason that policy should not extend to a misdemeanor defendant*); Turner*, 396 U.S. at 363–64 (finding no logical connection between fitness for political office and property ownership).

[8] *See also Allegheny Pittsburgh Coal*, 488 U.S. at 343–46 (holding that the asserted public benefit of administrative convenience for the government was trivial compared to the manifest injustice of assigning tax liability arbitrarily); *James*, 407 U.S. at 141–42 (holding that the state funds saved by denying indigent defendants exceptions to the

In sum, the rational-basis test is a meaningful standard. This is true even though dicta from the Court, taken literally and to the extreme, would mean that plaintiffs can never win. *See, e.g.*, *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993) ("[The need] to draw the line somewhere … renders the precise coordinates of the resulting legislative judgment virtually unreviewable."); *City of New Orleans*, 427 U.S. at 303 ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations."); *see also Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487–88 (1955). What matters is how the rational-basis test is applied, not merely how it is described. Government defendants often invoke these phrases in boilerplate to argue that the rational-basis inquiry ends once they articulate a legitimate interest. *See* Appellants' Br. 19–20. But this kind of rhetoric (*e.g.*, that plaintiffs must negate "every conceivable basis") should not displace what the Supreme Court actually does when applying the

---

enforcement of debt judgments was grossly disproportionate to the harms it inflicted on debtors); *Lindsey*, 405 U.S. at 77–78 (holding that the cost savings from deterring a few frivolous appeals were insufficient to justify a surety requirement that allowed many frivolous appeals, blocked many meritorious appeals, and showered a windfall on landlords).

standard.

### B.    … in the circuits.

The Supreme Court's view of rationality is also good law in the circuits. Since 2000, nearly every circuit has concluded that a claim before it could win under the rational-basis test.[9] Indeed, in the same time, the Federal Reporter has seen many circuit cases in which rational-basis plaintiffs won outright.[10]

---

[9] *See Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 482–84 (1st Cir. 2009); *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221–24 (2d Cir. 2012); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 107–12 (3d Cir. 2008); *Fauconier v. Clarke*, 966 F.3d 265, 277–79 (4th Cir. 2020); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 221–27 (5th Cir. 2013); *Craigmiles v. Giles*, 312 F.3d 220, 223–29 (6th Cir. 2002); *Swanson v. City of Chetek*, 719 F.3d 780, 783–85 (7th Cir. 2013); *Mathers v. Wright*, 636 F.3d 396, 399–402 (8th Cir. 2011); *Merrifield v. Lockyer*, 547 F.3d 978, 988–92 (9th Cir. 2008); *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1183–84 (10th Cir. 2009). *See also Edwards v. District of Columbia*, 755 F.3d 996, 1000 n.3 (D.C. Cir. 2014) ("doubt[ing]" that a speech restriction "could survive even rational basis review").

[10] *See Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1 (1st Cir. 2012); *Tapalian v. Tusino*, 377 F.3d 1 (1st Cir. 2004); *Fortress Bible Church v. Feiner*, 694 F.3d 208 (2d Cir. 2012); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95 (3d Cir. 2008); *St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013); *Simi Inv. Co. v. Harris County*, 236 F.3d 240 (5th Cir. 2000); *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002); *Cruz v. Town of Cicero*, 275 F.3d 579 (7th Cir. 2001); *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008); *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), *as amended* (Jan. 27, 2003); *Servin–Espinoza v. Ashcroft*,

One especially good example is the Fifth Circuit's decision in *St. Joseph Abbey v. Castille*. 712 F.3d 215 (5th Cir. 2013). That case struck down a Louisiana law prohibiting casket sales except by licensed funeral directors because the law was not rationally related to any legitimate governmental interest. *Id.* at 227. The unanimous panel of course applied the requisite deference and gave due attention to the validity of the government interests—while still engaging in the kind of serious analysis performed at the Supreme Court. And in that analysis, the court was willing to reject an illegitimate interest (a naked desire to enrich funeral directors). *Id.* at 222. It gave due regard to legitimate health-and-safety rationales, but it still rejected them in an analysis "informed by the setting and history of the challenged rule." *Id.* at 223. Even when accepting one of the government's arguments as a "perfectly rational statement of hypothesized footings for the challenged law," the court still

---

309 F.3d 1193 (9th Cir. 2002); *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025 (10th Cir. 2007); *Copelin–Brown v. N.M. State Pers. Off.*, 399 F.3d 1248 (10th Cir. 2005). *See also Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (reversing dismissal but clearly "hold[ing] that the statute violates the Fourteenth Amendment"); *In re Levenson*, 587 F.3d 925 (9th Cir. 2009) (order under circuit's employment-dispute resolution plan).

recognized that the hypothesis was "betrayed by the undisputed facts." *Id.*

In other words, the other circuits treat rational-basis claims as winnable. A ruling from this Court suggesting otherwise would break with that settled doctrine.

### C.      ... and within this Circuit.

An "anything goes" standard would also upset things here at home. District courts in this Circuit recognize that rational-basis claims are viable,[11] as does this Court itself.[12]

---

[11] *See, e.g.*, *Brown v. Smith*, 2024 WL 2819224, at *4–9 (E.D. Va. June 3, 2024); *Cano v. S.C. Dep't of Corr.*, 2023 WL 6644277, at *10–12 (D.S.C. May 31, 2023), *R&R adopted as modified*, 2023 WL 5767678 (Sept. 7, 2023); *Dove v. Patuxent Facility*, 2021 WL 5053095, at *12 (D. Md. Nov. 1, 2021); *Catherine H. Barber Mem'l Shelter, Inc. v. Town of North Wilkesboro*, 576 F. Supp. 3d 318, 335–43 (W.D.N.C. 2021); *Carcaño v. Cooper*, 350 F. Supp. 3d 388, 421–23 (M.D.N.C. 2018); *City of Greensboro v. Guilford Cnty. Bd. of Elections*, 248 F. Supp. 3d 692, 699–705 (M.D.N.C. 2017); *Legend Night Club v. Prince George's Cnty. Bd. of License Comm'rs*, 2009 WL 926989, at *5–6 (D. Md. Apr. 1, 2009); *Whitaker v. Sheild*, 2006 WL 1321481, at *6 (E.D. Va. May 3, 2006).

[12] *Fauconier v. Clarke*, 966 F.3d 265, 277–79 (4th Cir. 2020); *Morrison v. Garraghty*, 239 F.3d 648, 655, 659–661 (4th Cir. 2001); *Geo-Tech Reclamation Indus., Inc. v. Hamrick*, 886 F.2d 662, 664–67 (4th Cir. 1989); *Phan v. Virginia*, 806 F.2d 516, 521–23 (4th Cir. 1986).

Most relevant is a recent case called *Fauconier v. Clarke*, 966 F.3d 265, 277–79 (4th Cir. 2020), the facts of which also concern a health condition and the ability to work. Fauconier was a Virginia inmate who had "performed various jobs while in prison, despite suffering from myasthenia gravis, a neuromuscular disease that had, from time to time, required his hospitalization." *Id.* at 270. He worked "'competently' and without any accommodation." *Id.* Even so, he was later automatically disqualified from all prison jobs because of a blanket rule affecting anyone with any neuromuscular disease. *Id.* at 271–72. He sued, the district court dismissed, and then this Court reversed. It is "at least plausible," the Court explained, that Virgina's "policy of categorically restricting inmates with [a specific] medical status from 'all jobs' was not rationally connected to its interest in protecting inmate health and welfare." *Id.* at 279. Indeed, this Court specifically recognized that—even in an institution in which the government's interest is at its peak— "categorical exclusion … from employment [could be] insufficiently calibrated" when there was reason to believe the plaintiff could "in fact satisfactorily perform" various jobs. *Id.* at 278–79. The parallel to the

military and its accession ban are obvious. *Fauconier* thus means that the plaintiffs here also have a legitimate, winnable claim.

In brief, the rational-basis test is a genuine test. That much is clear at every level of the federal courts. The government does not need a perfect score to pass. But, when a law really is irrational, the government can and does fail.

## II.   Evidence matters in rational-basis cases.

That is because, like every other form of constitutional review, the rational-basis test has always allowed plaintiffs to prove their claims with evidence. Perhaps the best case for this point is *Cleburne*, which, again, the Court cited just weeks ago as a case in which the "record did not reveal 'any rational basis' for [a] city zoning ordinance." *Skrmetti*, 145 S. Ct. at 1836 (citing *Cleburne*, 473 U.S. at 448).

But it has always been the rule. In *Carolene Products* itself, the Supreme Court explained that when "the existence of a rational basis … depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased

-13-

to exist." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938) (internal citations omitted).[13] This has remained true as the doctrine developed. *See, e.g.*, *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) ("parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational"); *Plyler v. Doe*, 457 U.S. 202, 207 n.4, 228–30 (1982) (invoking "the available evidence" and "the record"); And it is still true today. *St. Joseph Abbey*, 712 F.3d at 223 ("[P]laintiffs may … negate a seemingly plausible basis for the law by adducing evidence of irrationality."); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 590–91 (9th Cir. 2008) ("[O]ur circuit has allowed plaintiffs to rebut the facts underlying defendants' asserted rationale for a classification, to show that the challenged classification could not reasonably be viewed to further the asserted purpose."). Thus, in rational-basis cases, this Court has explained that

---

[13] The circumstances in *Carolene Products* did eventually cease to exist. *See Milnot Co. v. Richardson*, 350 F. Supp. 221, 223–25 (N.D. Ill. 1972) (holding Filled Milk Act irrational as applied to Carolene Products Company's successor). *Accord Long v. Robinson*, 316 F. Supp. 22, 27–28 (D. Md. 1970) ("Whatever may have been the original justification for the exclusion of sixteen and seventeen year olds arrested in Baltimore City from the scope of the Juvenile Court Act, the uncontroverted evidence is that such basis no longer exists[.]"), *aff'd*, 436 F.2d 1116 (4th Cir. 1971).

"the question … is whether [a law] *does in fact* further [a] laudable purpose," *Geo-Tech Reclamation Indus., Inc. v. Hamrick*, 886 F.2d 662, 666 (4th Cir. 1989) (emphasis added), and it has remanded specifically for expansion of the record "all to the end that [a] theoretical rational justification may be proved or disproved." *Phan v. Virginia*, 806 F.2d 516, 522–23 (4th Cir. 1986); *see also id.* at 522 ("this case comes to us not hypothetically but with a record of some proof").

And this principle holds for *all* evidence, including evidence about topics like those here that might be called niche or technical. Take *Dias v. City & County of Denver*, a rational-basis challenge to a pit-bull ban. 567 F.3d 1169, 1183–84 (10th Cir. 2009). The Tenth Circuit held that the plaintiffs had stated a claim because they had alleged that "the state of science in 2009 [was] such that the bans [were] no longer rational." *Id.* at 1183. The court also relied on the views of the relevant experts, the American and United kennel clubs. *Id.* at 1183–84. Expert, scientific evidence was the *entire* basis for sustaining a rational-basis claim. Or take *St. Joseph Abbey*, the casket-sales case discussed above. There the state had argued that banning non-funeral directors from selling caskets could, hypothetically, prevent deceptive sales tactics. But the court

disagreed in part because of empirical findings from the Federal Trade Commission showing that the hypothesized deception was not happening in the real world. Those findings "shed[] much light on the disconnect between the post hoc hypothesis" of fraud-prevention and the law's actual, illegitimate effects. 712 F.3d at 226; *see also Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (holding similar ban irrational based in part on an expert statement available at 2001 WL 34905205).

This evidentiary principle is recognized throughout the courts. District courts follow it in rational-basis cases.[14] And so do courts when they rule *against* rational-basis plaintiffs. In *Clover Leaf Creamery*, for instance, the Supreme Court evaluated empirical research showing that

---

[14] *See, e.g.*, *Tiwari v. Friedlander*, 2020 WL 4745772, at *8–11 (W.D. Ky. Aug. 14, 2020) (at pleading stage, economic studies contradicted justifications for restriction on new medical businesses); *Frost v. City of Sioux City*, 2017 WL 4126986, at *9 (N.D. Iowa Sept. 18, 2017) (at pleading stage, expert evidence contradicted safety justification for pit-bull ban); *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r, Ind. Dep't of Health*, 64 F. Supp. 3d 1235, 1247–54 (S.D. Ind. 2014) (empirical research contradicted safety justification for medical requirements); *Pedersen v. OPM*, 881 F. Supp. 2d 294, 342–43 (D. Conn. 2012) (government research refuted hypothesis that benefit denials would preserve funds); *Burstyn v. City of Miami Beach*, 663 F. Supp. 528, 534 (S.D. Fla. 1987) (expert testimony contradicted hypothesis that zoning would protect tourism).

-16-

a ban on plastic milk jugs was ineffective before ultimately ruling against the plaintiffs because that empirical evidence was in "sharp conflict." 449 U.S. at 460, 464.[15] The point is, every kind of federal court—including this one—recognizes that the evidence matters in rational-basis cases.

## CONCLUSION

To borrow from the Fifth Circuit:

> [G]reat deference … does not demand judicial blindness to the history of a challenged rule or the context of its adoption nor does it require courts to accept nonsensical explanations for regulation.

*St. Joseph Abbey*, 712 F.3d at 226. Whatever standard the Court applies, the plaintiffs' claims are entitled to meaningful review on the evidentiary record.

Dated: July 17, 2025.

Respectfully submitted,

/s/ Andrew Ward

---

[15] *See also, e.g.*, *Amatel v. Reno*, 156 F.3d 192, 199 (D.C. Cir. 1998) (rational-basis case explaining that "scientific studies can have a corrective effect by establishing an apparently implausible connection or refuting an apparently obvious one").

**CERTIFICATE OF COMPLIANCE**

This brief complies with Fed. R. App. P. 29(a)(5) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 4,064 words. It also complies with Fed. R. App. P. 32(a)(5) because it is set in a 14-point proportionally spaced typeface, Century Schoolbook.

Dated: July 17, 2025.                    /s/ Andrew Ward