# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| ISAIAH WILKINS et al., | No. 24-2079 |
| Plaintiffs-Appellees, | |
| v. | |
| PETE HEGSETH et al., | |
| Defendants-Appellants. | |

## OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION FOR PARTIAL STAY PENDING APPEAL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................3

DISCUSSION .......................................................................................5

   A. The Court should reject the motion as requiring initial
      presentment in the district court. ...............................................5

   B. Appellants are not entitled to a stay because the harm
      described is not irreparable but is commensurate with the final
      judgment entered and the likelihood of avoiding the nationwide
      scope of the relief is low. ............................................................7

      1. Appellants cannot demonstrate a likelihood of success on the
         merits ...................................................................................8

      2. Appellants cannot demonstrate irreparable harm. ..................11

   C. Appellants cannot obtain a stay through admissions Appellees
      never made. ...............................................................................14

CONCLUSION ..................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Benisek v. Lamone,*
 585 U.S. 155 (2018) ...................................................................11

*Chamber of Commerce of the U.S. v. Lierman,*
 151 F.4th 530 (4th Cir. 2025) .................................................13

*Chem. Weapons Working Group v. Dep't of Army,*
 101 F.3d 1360 (4th Cir. 1996) ............................................5, 7

*Cumberland Tel. & Tel. Co. v. La. Pub. Serv. Comm'n,*
 260 U.S. 212 (1922) .....................................................................1

*Fish v. Kobach,*
 840 F.3d 710 (10th Cir. 2016) .................................................11

*Holmes v. Reddoch,* No. 21-30164,
 2012 WL 5913297 (5th Cir. Dec. 14, 2021) .........................1

*Labrador v. Poe ex rel. Poe,*
 144 S. Ct. 921 (2024) ................................................................13

*Ng v. Bd. of Regents of Univ. of Minn.,*
 64 F.4th 992 (8th Cir. 2023) ...................................................11

*Nken v. Holder,*
 556 U.S. 418 (2009) .....................................................................8

*PFLAG, Inc. v. Trump,* No. 25-1279,
 2026 WL 1429738 (4th Cir. 2026) .........................................13

*Quince Orchard Valley Citizens Ass'n v. Hodel,*
 872 F.2d 75 (4th Cir. 1989) .....................................................11

*Ruckelshaus v. Monsanto Co.,*
 463 U.S. 1315 (1983) .................................................................11

*Trump v. CASA,*
 606 U.S. 831 (2025) .............................................................9, 10

# Rules

4th Cir. R. 8 ............................................................................................7

Fed. R. App. P. (8)(a)(1)(A) ...............................................................1, 5

Fed. R. App. P. 8(a)(1)(C) ..................................................................1, 5

# INTRODUCTION

Twenty-one months after entry of an injunction remedying multiple constitutional and statutory violations, the government asks for the first time that the injunctive relief be stayed because of the irreparable harm it causes. Appellants' motion—in reality seeking to modify the injunction—must first be presented to the district court. *Compare* Fed. R. App. P. 8(a)(1)(C), *with* Fed. R. App. P. (8)(a)(1)(A) (differentiating modifying or suspending an injunction *while* an appeal is pending from staying the judgment and order—e.g., injunction— *pending* appeal). As the rules contemplate, the district court has the greatest familiarity and necessary insights to best determine whether and how the remedy should be adjusted in light of post-judgment caselaw.[1] On that basis alone, this Court should reject the government's misnamed and misdirected motion.

Should the Court choose to ignore or excuse Appellants' disregard of the appellate rules—including the failure even *to offer* reasons why

---

[1] *Cumberland Tel. & Tel. Co. v. La. Pub. Serv. Comm'n*, 260 U.S. 212, 219 (1922) (district court is "best and most convenient" forum to decide injunction pending appeal because it is most "familiar with the record"); *Holmes v. Reddoch*, No. 21-30164, 2012 WL 5913297, at *2 (5th Cir. Dec. 14, 2021) ("The district court … is in the best position to address in the first instance … whether a stay is warranted … .").

presenting their motion to the district court is impractical—the Court

should deny the requested stay/modification because Appellants are not

likely to succeed and are not experiencing irreparable harm. Appellants

are in fact *unlikely* to secure the remedy modification they seek; but

even more evidently, they cannot convincingly sustain the contention

that the harm resulting from an injunction they allowed to remain in

place *for 15 months* is irreparable. Appellants did nothing to address

the purported harm even after the Supreme Court issued the decision

improving their chances of securing a modification of the injunction,

instead continuing to sit on their hands until the appellate panel offered

a stay six months later. This is not how any party—much less a

governmental party—acts when facing irreparable harm.

Any harms Appellants may be suffering due to actions taken in

reliance upon the now-vacated panel stay amount to nothing more than

minor administrative inconvenience. The proper way to seek to alleviate

that inconvenience is by filing in the district court a motion to modify

the relief in light of new(ish) caselaw undermining the court's chosen

method of remedying the violations in which Appellants have engaged.

Alternatively, given the *de minimis* nature of the interim harm and

strong likelihood the nationwide relief is sustainable on other grounds, this Court could choose to order supplemental briefing and modify the relief as appropriate upon rehearing.

## BACKGROUND

This case involves a challenge to the military's policies barring people living with HIV ("PLWH") from joining the military. In 2022, plaintiffs—three individuals and one advocacy organization whose membership includes PLWH seeking to join or rejoin the armed forces— asserted three claims against the policies: one claim for violation of equal protection under the Due Process Clause of the Fifth Amendment and two claims for violation of the Administrative Procedure Act ("APA").

On August 20, 2024, after motions practice and extensive briefing on cross-motions for summary judgment, the district court ruled that the challenged policies violated both the constitutional guarantee of equal protection and the APA. The court entered an injunction addressing both the facial and as-applied challenges to the regulations constituting the bar to entry, providing complete relief to the individual and organizational plaintiffs. JA1032, JA1070.

The district court's injunction was in three parts. First, the court enjoined defendants from "denying [individual] plaintiffs … , and any other similarly situated asymptomatic HIV-positive individual with an undetectable viral load, accession into the United States military based on their HIV status." JA1070. Second, the court enjoined defendants from "enforcing the HIV-specific provisions of their policies and regulations barring asymptomatic HIV-positive individuals with undetectable viral loads from accession[.]" JA1070–JA1071. Third, the court mandated reevaluation of the decision to disenroll Isaiah Wilkins from the military academy prep school in light of the other injunctive relief. JA1071.

Defendants never asked the district court to stay the injunction pending appeal and did not seek a stay from this Court until filing their motion a week ago. Without prompting from Appellants, the appellate panel stayed the injunction *sua sponte* on the day of oral argument, December 9, 2025. Doc. 81. When the full Court granted rehearing *en banc* on May 18, 2026, that stay was lifted. Doc. 110.

## DISCUSSION

### A. The Court should reject the motion as requiring initial presentment in the district court.

Appellants' failure to first move in the district court or to explain the impracticality of doing so dooms their motion. Their so-called motion for a partial stay is in fact a transparent attempt to modify the injunction without involving the district court.

Appellants seek to "reinstitute" the stay imposed by the appellate panel that was lifted by the grant of Appellees' petition for rehearing. Mot. at 1. That stay—a modification of the injunction based on a Supreme Court opinion issued eleven months after the injunction's entry—was an option available to the panel; but for Appellants, the same modification can only be obtained by returning to the district court. *See* Fed. R. App. P. 8(a)(1)(A); *Chem. Weapons Working Group v. Dep't of Army*, 101 F.3d 1360, 1361 (4th Cir. 1996) ("Requests for stay pending appeal are governed by Fed. R. App. P. 8(a), which provides that an application for stay must ordinarily be made in the first instance in the district court." (internal quotation marks omitted)); *see also* Fed. R. App. P. 8(a)(1)(C) (applying same requirement for those

seeking "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending").

Likewise recognizing the impact of the intervening Supreme Court decision, and confident the district court would agree that the scope of the relief is affirmable on other grounds, Appellees suggested just such a remand on the remedy after affirmance on the merits. Audio Recording of Oral Argument (Dec. 9, 2025) ("Oral Argument") at 38:06-38:24; 38:50-39:22; 40:41-41:22.[2] The near certainty of that outcome is the same reason—it now seems apparent—Appellants do not want to return to the district court to seek this modification; hence the request before this Court to "reinstitute" the panel stay. But characterizing a substantial modification as merely returning to the particular *status quo* that Appellants prefer does not change the essential nature or actual intent of their motion.

Appellants may present their motion for a modification of the injunction to this Court only if they can demonstrate that presenting it in the district court is impracticable by "making a specific showing of the reasons the application was not made to the district court in the

---

[2] https://www.ca4.uscourts.gov/OAarchive/mp3/24-2079-20251209.mp3

6

first instance." 4th Cir. R. 8. Likely because there are no good ones,

Appellants have not offered any such reasons in their motion. As such,

this Court should summarily reject Appellants' attempt to short circuit

the rules and place this motion before an appellate panel as the very

type of vertical forum shopping Rule 8 is designed to prevent. *See Chem.*

*Weapons Working Group*, 101 F.3d at 1361-62 (denying request for stay

pending appeal when movant failed to justify not initially seeking stay

in district court).

**B.   Appellants are not entitled to a stay because the harm
      described is not irreparable but is commensurate with
      the final judgment entered and the likelihood of
      avoiding the nationwide scope of the relief is low.**

If the Court entertains this motion instead of sending Appellants

to the district court as the appropriate initial decision-maker, it should

deny the motion because any harms they are currently experiencing are

the result of an effective remedial injunction that they silently accepted

for nearly 16 months and because their likelihood of success—framed as

eliminating the nationwide scope of the relief instead of just one

particular legal basis for that relief—is quite low.

A stay pending appeal is an extraordinary remedy, "not a matter

of right, even if irreparable injury might otherwise result, [but rather]

7

an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted) (cleaned up). Whether to grant this extraordinary remedy is guided by four factors:

> (1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injury the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (internal quotation marks omitted). "The first two factors … are the most critical." *Id.* Here, Appellants have not demonstrated a likelihood of success in narrowing the nationwide scope of the relief, nor have they shown that they will endure substantial—much less irreversible—harm absent a stay they did not have for 15 months and did not ask for until now. These two factors alone are fatal to their stay request.

### 1. Appellants cannot demonstrate a likelihood of success on the merits

Appellants cannot establish a likelihood of success if "the merits" is defined as narrowing the injunction to the three individual plaintiffs. Traditionally, "the merits" has been defined as the movant's likelihood

of prevailing on the claims giving rise to the injunctive relief at issue; with judgment in hand, Appellees have the greater likelihood of success under this rubric. But even if the Court accepts Appellants' implicit invitation to narrow the scope of the merits inquiry to the availability of relief with a nationwide impact, Appellants have not demonstrated a likelihood of success. Employing the narrower definition of "the merits" from *CASA* here focuses the inquiry on Appellants' chances of ultimately narrowing the relief to the three individual plaintiffs—and not merely on whether the nationwide scope of the *current* injunction can be sustained. *See Trump v. CASA*, 606 U.S. 831, 860 (2025) (defining the merits for a preliminary injunction as the scope of the relief under review not the outcome of the underlying claims).

Because Appellants are unlikely in the end to narrow the impact of the relief in this way, they do not have the likelihood of success required to obtain a stay. The district court—after thoroughly reviewing new evidence, along with the evidence resubmitted from two previous related cases, and considering all of the arguments, including those reiterated from those two previous cases—concluded that Appellants' regulations barring the entry of people living with HIV violated the

APA and the equal protection component of the Fifth Amendment. In reliance on then-valid Fourth Circuit authority, the district court used its injunctive powers to provide relief to all the plaintiffs for both their facial and as-applied challenges under both claims.

Though *CASA* modified the manner in which the district court could provide comprehensive relief here, it did not eliminate it entirely. *CASA*, 680 U.S. at 839 (defining the question as the federal courts' equitable authority to provide injunctive relief to non-parties under the Judiciary Act of 1789); *id.* at 851-54 (leaving to the lower courts whether complete relief for organizational plaintiffs and States may have a geographically broader effect). If afforded the opportunity, the district court likely would impose a nationwide injunction to effectuate complete relief for plaintiff Minority Veterans Association and its members, turn to the APA to vacate the regulations the Court previously found to violate the APA, or both. *See* Br. of Pltfs-Appellees (Doc. 56), at 56-62 (setting forth arguments for affirming remedy on alternative grounds). Similarly, given the violations found by the district court and the purely legal question of the appropriate remedy, this Court could affirm the decision and the scope of the relief by taking

either or both of those steps. *See* Oral Argument at 37:51-38:04 (Question: "So you agree, at least as [the injunction] currently stands…it's wrong. **Either we gotta find another basis for it** …" (emphasis added)). In either scenario, Appellants' likelihood of successfully narrowing the scope of the remedy here is relatively low.

### 2. Appellants cannot demonstrate irreparable harm.

Appellants also cannot show irreparable injury. A party's delay in seeking a stay "indicate[s] an absence of … irreparable harm." *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989). This is because the "failure to act with greater dispatch tends to blunt [a] claim of urgency and counsels against the grant of a stay." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983) (Blackman, J., in chambers); *see Benisek v. Lamone*, 585 U.S. 155, 160 (2018) (per curiam) (a party's "unnecessary … delay" in seeking interim relief "weigh[s] against their request" for relief). An unreasonable delay alone may be sufficient grounds to deny a stay. *See Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) ("delay may belie the claim of an irreparable injury"). The key question is whether the delay

was reasonable or instead a decision by the party to sit on its rights. *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016).

The government's delay here was unreasonable and clearly a decision to sit on its rights. After the district court imposed the injunction and entered judgment in August 2024, Appellants did nothing in the two months leading up to filing their notice of appeal or in the almost 14 months that followed. Appellants did not ask either court for a stay and instead willingly complied with the injunction. Undersigned counsel is personally aware of many applicants with HIV who enlisted during this period, and several more who applied but were disqualified for reasons unrelated to their HIV status. Others were delayed or slow-walked. But not once during this period did Appellants claim that their willing compliance with the injunction caused them irreparable injury. The failure to seek relief over such an extended time, either from the district court or this Court, reflects Appellants' intentional decision to sit on their rights.

The government points to intervening legal developments that purportedly undermine the injunction. But the decisions on which it relies—*CASA*, and a case citing it—were issued long before Appellants

finally sought a stay in this Court: *CASA* was issued on June 27, 2025, and *Chamber of Commerce of the U.S. v. Lierman*, 151 F.4th 530, 543 (4th Cir. 2025), was decided on August 15, 2025. Yet Appellants still did nothing. If the injunction inflicts the sort of irreparable harm the government asserts here, that harm also existed in August 2024, in July and August 2025, and throughout the many months that followed. Appellants nonetheless declined to seek relief from the injunction. They therefore cannot plausibly characterize the same alleged injury as suddenly urgent and irreparable now. *See PFLAG, Inc. v. Trump*, No. 25-1279, 2026 WL 1429738, at *6 (4th Cir. 2026) (Benjamin, King, JJ., concurring) (concurring in denial of rehearing to explain denial of motion to stay, identifying government's long delay and continued willing compliance as vitiating assertion of irreparable harm).

In short, whatever force the government's arguments may ultimately have, it does not relieve Appellants of the independent obligation to establish irreparable injury as a prerequisite for a stay. The Court need not even consider the propriety of the injunction, for "[i]f the moving party has not demonstrated irreparable harm, then this

Court can avoid delving into the merits." *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring).

Defendants sat on their rights and willingly complied with the injunction for over 15 months. Because those actions vitiate any possible showing of irreparable harm, the motion should be denied.

**C.    Appellants cannot obtain a stay through admissions Appellees never made.**

Unable to meet the standard for a stay, the government contends that Appellees agreed to one. Appellees did no such thing, nor did they consent, concede, or admit to the relief Appellants seek in this motion.

Before oral argument, Appellees conceded to opposing counsel that *CASA* had removed the power and authority on which the district court relied to enter an injunction that included those similarly situated to the individual plaintiffs. Appellees did not, however, concede or admit anything else—not about the propriety of a stay, the need for a stay, or Appellants' ability to meet any of the factors justifying a stay. Appellants' heavy reliance on purported admissions of this nature underscores the weakness of their arguments.

Appellees strategic choices during and after oral argument cannot be removed from the context in which they were made—and meanings

14

and intentions cannot be ascribed to or extrapolated from them that are not there. Heading to oral argument, Appellees' counsel intended to convince the panel to affirm the decision on the merits and to either affirm the relief on alternative grounds or to remand for the district court to reconsider the relief in light of *CASA*. Oral Argument, 37:00-38:24 (stating Appellees' position); *see also id.* at 37:57-38:03 (member of the appellate panel suggesting the Court could find another basis for the nationwide relief). When it became evident the panel was highly unlikely to affirm on the merits[3] and proposed an immediate stay of what Judge Richardson described as the "illegal" nationwide scope of the injunction, Appellees' counsel stated: "I can't argue against that, your Honor." *Id.* at 38:24-38:45. That statement was not *agreement* in any sense of the word but merely acceptance of what was coming.

Subsequently, when the panel entered an order staying enforcement of the injunction completely, Appellees filed a motion reminding the Court that it had not posited—and Appellees had not

---

[3] Without a written transcript of the oral argument (which Appellees ordered after receiving Appellants' motion), it is difficult to identify specific portions or statements that led to this view; currently, listening to the entire oral argument would be the best way to grasp the tenor of the arguments and the reasons counsel came to believe Appellees were unlikely to prevail. Oral Argument, *passim*.

agreed—that staying the injunction with respect to the individual plaintiffs was appropriate. *See* Doc. 82, at 4. In that context, Appellees in fact characterized their acquiescence to the nationwide portion of the stay as having "agreed" to that portion of the stay (in the exchange described above). *Id.* "Accepted" would have been a better word choice, but it should be remembered that the stay was already in place, and Appellees were trying to contrast the propriety of a stay on the nationwide scope with the impropriety of a stay on the relief for the individual plaintiffs. *Id.* at 4-5. This cannot be taken seriously as a statement of Appellees' position on whether even the stay on the nationwide scope should have been imposed. Appellants' efforts to manufacture agreement on their stay request should be rejected.

## CONCLUSION

Appellants' request for a stay is procedurally improper, tardy, and without merit. The Court should deny the motion.

Respectfully submitted,

Dated: June 11, 2026

Scott A. Schoettes
sschoettes@gmail.com
Scott A. Schoettes, Esq.
275 Sandy Point Trail
Palm Springs, CA 92262
(773) 474-9250

 /s/ Peter Perkowski

Peter E. Perkowski
peter@perkowskilegal.com
Perkowski Legal, PC
515 S. Flower St., Suite 1800
Los Angeles, CA 90071
(213) 340-5796

*Attorneys for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

I certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(2)(a) as it contains 3,168 words, excluding those portions exempted by Rule 32(f). I certify that the motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) as it is prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

Dated: June 11, 2026 _/s/ Peter Perkowski_
Peter E. Perkowski