**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, DC 20530

Tel: (202) 514-7823

September 11, 2026

VIA CM/ECF

Nwamaka Anowi
Clerk of the Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

RE: *Wilkins v. Hegseth*,
No. 24-2079 (4th Cir.)

Dear Ms. Anowi:

We write in response to plaintiffs' letter related to 2025 guidelines from the U.S. Public Health Service related to (*inter alia*) post-exposure prophylaxis (PEP) for occupational "exposures to source patients with undetectable viral loads." Guidelines at 1. Those Guidelines, which were published after the close of briefing in this case, state that after such an exposure the decision whether to provide PEP, or to "discontinue" PEP before the completion of a course of treatment, should be based on "shared clinical decision-making," taking into account the "characteristics, values, and preferences of the individual patient and the clinical discretion of the healthcare provider." Guidelines at 4, 6.

The Guidelines further explain that if "shared decision-making" is being used, relevant factors include "(1) route of inoculation (e.g., percutaneous to deep tissue with large-bore needle); (2) size of inoculum (e.g., large volume of blood); and (3) source patient use of and adherence to [anti-retroviral therapy]. The greater the risk of the occupational exposure to the source patient with undetectable viral load is, the greater the potential that the regimen's adverse effects will be outweighed by its potential effectiveness." Guidelines at 9.

The Guidelines thus make clear that PEP can be an appropriate course following occupational exposure to a patient with an undetectable viral load. The

Guidelines do not suggest that PEP is inappropriate even in ordinary civilian hospital settings. Moreover, the Guidelines make clear that the degree of exposure and the source patient's adherence to anti-retroviral therapy are relevant factors. As explained in the government's briefs, the conditions of military healthcare in a deployed setting may involve large-scale injuries and an increased risk of potential occupational exposures, as well as difficulties in adherence to a medication regimen. Opening Br. 5, 29-30, 32-33, 51-52; Reply 5-6, 9. In particular, the provision of PEP—whether based on the healthcare provider's own choices or the recommendation of a healthcare professional—would remove those providers from providing care to other soldiers. Nothing about the Guidelines plaintiffs identify alters those concerns.

Sincerely,

*/s/ Brad Hinshelwood*
Brad Hinshelwood

cc: Counsel of Record (via CM/ECF)